360 So.2d 692 (1978)
KING & HEATH CONSTRUCTION COMPANY and New Hampshire Insurance Company
v.
G.W. HESTER, Jr.
No. 50271.
Supreme Court of Mississippi.
July 12, 1978.
Downey & Jennings, John H. Downey, Jackson, Armis E. Hawkins, Houston, for appellant.
*693 Hilbun & Yoste, Charles T. Yoste, Starkville, for appellee.
Before SMITH, P.J., and SUGG and BROOM, JJ.
BROOM, Justice, for the Court:
Workmen's compensation benefits were by order of the administrative judge denied claimant, G.W. Hester, Jr. (appellee). Claimant appealed to the Mississippi Workmen's Compensation Commission which unanimously affirmed the order of the administrative judge. Then claimant appealed to the Circuit Court of Yazoo County which reversed the commission, and remanded the cause to the commission for determination of degree of disability and award of benefits to claimant. We reverse the circuit court and reinstate the commission's order.
In April 1974 claimant was employed by King & Heath Construction Company (appellant, employer herein) and was laying plastic water pipes in Yazoo County where the employer was constructing a rural water line. Claimant's contention is that he got off a tractor which he operated and manually attempted to get a piece of pipe in position so it would properly go into a ditch. He said, "I felt a sharp pain in my back and burning in my back." His version was that he told fellow employee Butler, "I think I broke my back."
According to the record, claimant operated the tractor in his work until August 3, 1974, when he voluntarily left his employment. Claimant and the employer's other workers lived in Webster County but stayed in motels in Yazoo County while at work, and went home on weekends. He worked about twelve hours the day of the accident and continued to work the remainder of the week. During the week following the accident, claimant put in eleven to twelve hours each day. During the five day work week of April 22-26, he put in fifty-four hours. He averaged working eleven hours daily (twenty work days) in the month of May 1974, and about the same per work day thereafter until Friday, August 2, 1974, on which day he worked ten hours and quit his job. He worked the same hours as his coworkers through the summer except he was hospitalized July 8-12. After the alleged injury, claimant's roommate, Henley (also his travel companion), did not recall that claimant said anything about any job related injury. Henley remembered an occasion when claimant had some medicine which Henley understood was for "rheumatism"; and on one occasion claimant asked Henley for some of Henley's medicine for "all over" complaints. Claimant's foreman, Hardin, testified that he never noticed claimant having any difficulty with his work, and he said claimant made no complaint to him. Hardin said that he saw claimant and others engage in wrestling during the summer on different occasions after the alleged injury. Two of the men who wrestled with claimant testified to such activities and stated that claimant never complained to them about his back, although he did wrestle and throw them around.
According to Mr. Heath, who owned the construction company, claimant complained to him one time about the equipment, and stated that he hurt his back jumping on the pipe. Claimant told him on one occasion that he had been to the doctor.
Medical proof submitted for the claimant was that of a general practitioner, Dr. Laird, who stated that in his opinion claimant was totally disabled, and he attributed the disability to claimant's April 1974 alleged back injury. Dr. Laird stated that he first saw claimant on account of the back injury on May 4, 1974, but Dr. Laird's clinical notes revealed no indication of any job related accident. The doctor's notes dated July 5, 1974, make no indication about any job injury, on which date he ordered claimant admitted to the Oktibbeha County Hospital as of July 7. The standard form surgeon's report which was signed by Dr. Laird and dated August 17, 1974, indicates that the date of the accident was "about 1 month ago." (Note that a month ago would date the injury July 17). Paragraph 5 of the report asked that the surgeon's report "[S]tate in patient's own words *694 where and how accident occurred," and there was typed in on the blank, "[W]as pulling on cable and pain started in back." (This also conflicts with claimant's version). According to this report, Dr. Laird referred claimant to the VA Hospital, and afterward Dr. Laird's testimony is that he may have referred claimant to Dr. Tutor in Tupelo, who did not testify although it appears that claimant had surgery on his back in the fall of 1974. Dr. Laird testified that the reason he sent claimant to the Veterans Administration was because "his boss said that they were not going to have anything to do with this" (according to claimant). To the contrary, claimant denied telling the doctor that his supervisor or boss had said they would not pay the bill, and stated he didn't know "I had workmen's insurance ..."
Dr. Lillard, the VA doctor who examined claimant, testified on behalf of the employer and carrier that the claimant gave him no history of being injured on the job. This was admitted by claimant. Dr. Lillard gave claimant an extensive examination which "revealed no signs or symptoms indicating nerve root involvement," and he found "no mechanical signs or neurologic deficit." He diagnosed claimant as having "early minimal degenerative arthritis of the spine."
Dr. Farber (an orthopedist) also testified for the employer and carrier. He examined the claimant April 16, 1975, and noted that claimant had apparently had surgery: "laminectomy of L4 and 5 on the right and there was some narrowing at L4-5 and L5-S1 interspaces... ." He evaluated claimant as having fifteen to twenty percent permanent partial impairment of the whole body. Farber's conclusion was that from a medical standpoint it was improbable that plaintiff could have sustained intervertebral disc injuries with nerve root pressure in April 1974 (which was Dr. Laird's diagnosis), and thereafter made the work history which the record showed that claimant did up until August of that year.
Based upon this record, the administrative judge found that the claimant failed "to prove by substantial or the more credible evidence that he suffered an accidental injury that arose out of and in the scope of his employment ... on or about April 10, 1974" with the employer. The full commission unanimously found that the order of the administrative judge "does not contain error of fact or law" and affirmed.
The well established rule in this jurisdiction is that on disputed issues of fact, neither the circuit court nor this Court are triers of fact, and neither will disturb the finding of the commission if it is supported by substantial evidence. Of course, this substantial evidence rule is "flexible to permit the court to check any fundamentally erroneous exercise of administrative power." Central Elec. Power Ass'n v. Hicks, 236 Miss. 378, 388, 110 So.2d 351, 356 (1959).
We cannot say upon this record that the finding and order of the commission or the administrative judge was not supported by substantial evidence. It may be that had we been sitting as triers of fact we might have found in favor of the claimant; nevertheless, we cannot say that the decision of the commission was fundamentally erroneous in any respect. The controlling issue is: Did the claimant in April 1974 sustain a compensable back injury during the course of his employment with his employer, King & Heath Construction Company? The issue was unanimously resolved by both the administrative judge and the full commission in favor of the employer and carrier. It was upon disputed evidence that the commission made its finding, and careful study of the record does not reveal that the commission made any fundamentally erroneous exercise of administrative power. Neither can we say that the finding violated practical and commonsensical logic. It is significant that the claimant continued his work after April, working regular hours (except for one interval) until August. His testimony and the details of the reports he gave the doctors contained significant inconsistencies and contradictions, and the commission's task was to resolve the conflicts. Upon the whole record, we are of the opinion that it was error for the circuit judge to *695 reverse the commission's order and, accordingly, its order will be reinstated.
REVERSED; AND ORDER OF COMMISSION REINSTATED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE and COFER, JJ., concur.
BOWLING, J., took no part.