722 So.2d 708 (1998)
TOMMY BROOKS OIL COMPANY and Federated Mutual Insurance Company, Appellants,
v.
Charles Warren LEACH, Deceased and Laressa Leach, Appellee.
No. 97-CC-00588 COA.
Court of Appeals of Mississippi.
September 29, 1998.
*709 George E. Read, Oxford, Attorney for Appellants.
James W. Bingham, Tupelo, Attorney for Appellee.
Before THOMAS, P.J., and KING and SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Tommy Brooks Oil Company and Federated Mutual Insurance Company appeal *710 the decision of the circuit court raising the following issues as error:
I. THE CIRCUIT COURT OF LEE COUNTY, MISSISSIPPI APPLIED THE INCORRECT STANDARD OF REVIEW IN REVERSING THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.
II. SUBSTANTIAL EVIDENCE EXISTED TO SUPPORT THE DECISION OF THE WORKERS' COMPENSATION COMMISSION.
¶ 2. Finding error, we reverse and reinstate the order of the Workers' Compensation Commission.

FACTS
¶ 3. Charles Warren Leach began work as a maintenance mechanic for Tommy Brooks Oil Company in April 1991. Leach's primary duties were to assist in the installation, repair, and maintenance of pumps and equipment that the employer had in operation. Leach's normal working hours were from eight to five. Leach was also supplied with a company truck to travel to and from job sites, as well as to and from his home.
¶ 4. On December 24, 1991, Tommy Brooks Oil Company hosted a small Christmas party which began around noon. The employees were given their holiday bonuses and snacks were served. There was no indication that alcoholic beverages were served. After the party the employees were dismissed for the holiday.
¶ 5. Around 2:00 p.m. that afternoon, Leach was involved in a one-vehicle automobile accident. The accident occurred east of the employer's place of business while Leach was driving west. The site of the accident was on a possible route from Tommy Brooks Oil Company to Leach's home. Leach was hospitalized from December 24, 1991 until his death on January 10, 1992. When Leach was admitted to the hospital, his blood alcohol level was .20%, twice the legal limit. At the time of the accident Leach was driving his company truck.
¶ 6. Laressa Leach, decedent's widow, filed a workers' compensation claim for death benefits. At the hearing before the administrative law judge, Laressa testified that Leach would sometimes be called out by his employer after-hours and on weekends. This testimony was disputed by co-workers James T. Johnson and Paul Clayton (both had some duties of supervision over mechanics employed by Tommy Brooks Oil Company). They testified that although they could not say Leach had never been called out afterhours, they had no recollection of it ever happening. Johnson also testified that he asked Leach to come shoot pool with him after the Christmas party, but Leach declined saying he was going to a deer camp. Clayton also testified that Leach had said he was going to a deer camp after the party. Johnson further testified that the route Leach was on when he got in his fatal accident was Leach's normal and best route to reach Leach's home.
¶ 7. Two witnesses to the fatal accident also testified before the administrative law judge. Forrest Anthony testified that he followed Leach's truck for about 15 or 20 minutes when another car cut in front of the truck, causing the accident. F.D. Dendy testified that Leach was in the left lane when his left wheel went off the road, the truck then veered to the right then back to the left before it flipped over. Dendy testified that no one cut Leach off.
¶ 8. The administrative law judge ruled that Leach was not acting in the course and scope of his employment when he was involved in the accident. This ruling was affirmed by the Full Commission. The Circuit Court of Lee County held that the decision of the administrative law judge and the Full Commission to be clearly erroneous and not supported by credible evidence, and this appeal ensued.

ANALYSIS

I.

THE CIRCUIT COURT OF LEE COUNTY, MISSISSIPPI APPLIED THE INCORRECT STANDARD OF REVIEW IN REVERSING THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.
¶ 9. Appellants argue the Circuit Court of Lee County was in error in reviewing this *711 case de novo, rather than deferring to the findings of the Commission. Appellants maintain that the circuit court should have simply reviewed whether or not substantial evidence existed to support the decision of the Commission. We agree.
¶ 10. Our scope of review on appeal is limited to a determination of whether the Commission's findings of fact and order are supported by substantial evidence. Marshall Durbin Co. v. Warren, 633 So.2d 1006, 1009 (Miss.1994). We will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994) (citations omitted). "By the same token, when the decision of the Commission is before the circuit court on intermediate appeal, that circuit court may not tamper with the findings of fact, where the findings are supported by a sufficient weight of the evidence." Natchez Equip.Co. v. Gibbs, 623 So.2d 270, 274 (Miss.1993). The circuit court commits error if it simply supplants its judgment for that of the Commission. Id.
¶ 11. In this case the administrative law judge's ruling, which was affirmed by the Full Commission, held that Leach was acting outside the course and scope of his employment when he was involved in the accident. The administrative law judge's order on this point reads as follows:
Mrs. Leach contends her husband must have been on a service call, a contention that cannot succeed unless it is a reasonable inference from the evidence. No evidence directly supports this. What argues for the inference is that Leach was in a company vehicle, that he sometimes went on after-hours service calls (according to Mrs. Leach) and that he had not gone home. What argues against such an inference is that no record of a service call was presented, no one testified Leach was called out that day, Leach was logically the last choice to be called out, Leach told coworkers he was going to a deer camp, and, most importantly, his blood alcohol level. I cannot believe decedent could have reached this alcohol level while working on gasoline pumps.
In view of my finding that Charles Leach was not in the course and scope of his employment, the average weekly wage and proximate cause issues are moot.
¶ 12. It was the duty of the circuit court to review this order and determine if substantial evidence supported it. Instead, the circuit court made a factual determination that the employer failed to prove that Leach's intoxication was the proximate cause of the accident. The administrative law judge never made a factual determination in regards to the intoxication since he considered that issue moot. It was therefore improper of the circuit court to even consider this issue.
¶ 13. The circuit court also made a factual determination when it held that the claimants had met their burden of proof that Leach was killed while acting in the course and scope of his employment since he was traveling over a highway that would properly be expected to take decedent home. Again, the circuit court merely made its own factual determination rather than determine whether the administrative law judge's finding that Leach was acting outside the course and scope of his employment was supported by sufficient weight of the evidence.
¶ 14. The circuit court merely found evidence that supported its conclusion that Leach was acting in the course and scope of his employment and ignored the evidence relied on by the administrative law judge. In so doing the circuit court did not apply the proper standard of review. However, this does not end our review. We must now determine whether or not the administrative law judge's ruling was supported by sufficient weight of the evidence.

II.

SUBSTANTIAL EVIDENCE EXISTED TO SUPPORT THE DECISION OF THE WORKERS' COMPENSATION COMMISSION.
¶ 15. "On appeal, this Court reviews matters of law de novo, while according the interpretation of the Commission great weight and deference." Natchez Equip. Co., *712 623 So.2d at 273 (citing KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991)). "So long as the Commission's decision contains no error of law and is based on substantial evidence, this Court will not disturb the findings." Id. at 273-74 (citing Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1296-97 (Miss.1990)).
¶ 16. In this case we have the administrative law judge's conclusion that Leach was not acting in the course and scope of his employment when he was involved in an automobile accident that cost him his life. The general rule in regard to scope of employment is that the hazards encountered by employees going to and returning from their work and off the employer's premises are not incident to employment and that accidents arising therefrom are not compensable. Reading & Bates, Inc. v. Whittington, 208 So.2d 437, 439 (Miss.1968). A recognized exception to this rule is where the employer furnishes the transportation or remunerates the employee for transportation. Id. Furthermore our supreme court has stated:
In order to render an injury and death non-compensable on the grounds that an employee working for the Master had deviated from his duties, the testimony must be sufficient to constitute abandonment and a mere deviation or departure by a servant from a strict course of duty, although for a purpose of his own, does not in and of itself constitute such a departure from the Master's business as to relieve from liability for the servant's act on the ground that the servant has deviated from his service.
Estate of Brown v. Pearl River Valley, 627 So.2d 308, 311 (Miss.1993) (citations omitted).
¶ 17. Our supreme court has also stated that:
It is well settled that, when a motor vehicle of a defendant is being driven by one of its regular employees, the presumption arises that such driver is engaged in the line of his appointed duties and in the furtherance of his employer's business. If it is claimed that the employee at the time deviated from his duty and was on a mission purely personal to himself, the burden is on the employer to prove that the employee has abandoned the duties of his employment, and has gone about some purpose of his own in which the employer's business is not concerned and which is not incident to his employment. If the evidence leaves this question in doubt, the issue must be submitted to the jury.
Wilson Furniture Company v. Wilson, 237 Miss. 512, 518, 115 So.2d 141, 143 (Miss.1959) (citations omitted).
¶ 18. In the case at bar it was undisputed that Leach was driving a company vehicle at the time of his fatal accident. Therefore, in order for Leach's injury and death to be non-compensable, he must have abandoned his duties and been upon a purely personal mission, and thus, not returning home at the time of the accident. The administrative law judge concluded that Leach was not acting in the course and scope of employment when the accident occurred. Although the administrative law judge did not specifically conclude that Leach had abandoned his duties, under the facts of this case his ruling implied that such an abandonment did take place. Therefore, we must determine if substantial evidence supports the conclusion that Leach had abandoned his duties and therefore, not acting in the course and scope of employment at the time of the accident. We hold that the administrative law judge's ruling was supported by the weight of the evidence.
¶ 19. First, the administrative law judge concluded that Leach was not on any type of after hours call. There was more than credible and substantial evidence to support this finding. There was no record of any service call; no one testified that Leach was called out; no one testified that Leach had ever been called on a service call; and Leach was the last person who would normally be called for an emergency service call. However, this does not end our inquiry for even if Leach was not on a service call he could still be acting in the course and scope of employment if he was heading home.
¶ 20. As stated above there must be substantial evidence that Leach abandoned his duties and was not on his way home at the time of the accident. We hold that such *713 evidence did exist. Laressa Leach testified that her husband would consume between a six pack and a twelve pack of beer most days after work. When Leach was admitted to the hospital, his blood alcohol level was .20%, twice the legal limit. Johnson testified that he left the party between 12:30 and 1:00 p.m., and that everyone was in the process of leaving. However, Johnson also testified that Leach was still physically present at Tommy Brooks Oil Company when he left. The site of the accident was about 15 minutes from Tommy Brooks Oil Company according to the testimony of Johnson. Clayton was the only witness to directly testify when Leach left the party. Clayton observed Leach leaving around 1:30 or 2:00 p.m. or "It could have been a little earlier than that. I'm not real sure." No testimony was given that alcohol was served at the party. There was no testimony of alcohol or empty containers in the Leach's truck.
¶ 21. We are then left with a time frame of about 45 minutes between when Leach left the party and when he got in the accident, for him to consume enough alcohol to reach a.20% blood alcohol level. This window is even smaller considering the testimony of Anthony that he followed Leach's truck for about 15 to 20 minutes. However, the clear inference is that Leach went somewhere after the party and consumed enough alcohol to reach that level. As the administrative law judge said in his order "[t]he site of the accident is on a possible route home from the employer's place of business, but it is hardly likely that Leach went directly home from the workplace." Furthermore, Johnson and Clayton both testified that Leach told them he was going to a deer camp after the party.
¶ 22. The administrative law judge found and the Commission agreed, as a matter of fact, that proof was sufficient to show that Leach was not acting in the course and scope of employment when the accident occurred. There is enough evidence before us to support this finding.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS REVERSED AND ORDER OF WORKERS' COMPENSATION COMMISSION REINSTATED. COSTS ARE TAXED TO APPELLEE.
BRIDGES, C.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
McMILLIN, P.J., not participating.